AYC for AUSA Roscoe 12/19/18



FILED
DEC 19 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY MC DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Cell Site information held by Sprint PCS, headquartered at 6480 Sprint Parkway Overland Park, Kansas 66251

Case No. '18 MJ 11662

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A
(INCORPORATED HEREIN)

located in the ______ District of Kansas, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B
(INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. §§ 952, 960, and 963 | Importation and conspiracy to import Methamphetamine and Fentanyl. |

The application is based on these facts:

SEE AFFIDAVIT OF SPECIAL AGENT ANDREW SCHLOE

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Andrew Schloe, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/19/18

[signature]
*Judge's signature*

City and state: El Centro, California

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

This warrant applies to records and information associated with the cellular telephone number 775-412-8519, **Target Data**, that are stored at premises controlled by Sprint PCS, headquartered at 6480 Sprint Parkway Overland Park, KS 66251.

ATTACHMENT B

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of May 20, 2018 up to and including August 20, 2018:

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 952, 960, and 963 during the period of May 20, 2018 up to and including August 20, 2018.




# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Andrew Schloe, having been duly sworn, do hereby state that the following is true to my knowledge and belief.

## INTRODUCTION

1. This affidavit supports an application for a warrant for information associated with Sprint PCS telephone number 775-412-8519 (the "**Target Data**"), including subscriber information, telephone toll data, and cell-site geo-location information, for the period of May 20, 2018 up to and including August 20, 2018. As set forth below, probable cause exists to believe that the Target Data contains evidence of the importation of controlled substances, in violation of 21 U.S.C. §§ 952, 960, and 963. The Target Data is currently in the possession of Sprint PCS, headquartered at 6480 Sprint Parkway Overland Park, KS 66251. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Sprint PCS to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

## TRAINING AND EXPERIENCE

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510 (7), that is an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. As a Special Agent with HSI, I am cross-designated under Title 21 to investigate criminal violations of the Controlled Substances Act. My responsibilities include investigating and enforcing violations of Federal law including, but not limited to, the enforcement of Federal narcotics laws, Immigration laws, the Money Laundering Control Act, and various Customs violations.

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since September 2017. I am currently assigned to the ICE/HSI Office

of Assistant Special Agent in Charge in El Centro, California. My formal education includes a Bachelor of Arts Degree in International Conflict Analysis and Resolution from George Mason University. During October 2017, I attended the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. At FLETC, I received formalized training in various investigative techniques required of every Special Agent candidate before becoming a Special Agent with HSI. Following my successful completion of the academy at FLETC, I was assigned to the HSI ASAC Calexico's Contraband Smuggling 3 (CS3) group. As a Special Agent with the CS3, my primary duties involve the investigation of transnational criminal organizations that smuggle contraband in, around, and through Imperial County, California. Prior to this employment, I was a Police Officer in Arlington County, Virginia and I am currently a Military Intelligence Officer in the United States Army Reserve.

4. I have also received training in the field of narcotics enforcement. I have attended numerous drug investigation training courses administered by other law enforcement agencies and related professional organizations. I have participated in all aspects of narcotic investigations from street-level distributors to large-scale trafficking organizations. I have received training and have gained experience investigating international, national, and regional criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute controlled substances, including marijuana, methamphetamine, cocaine, heroin, and other controlled substances and precursor materials. From my training and experience, I have become familiar with the techniques and methods utilized by drug distributors.

5. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects, conducted physical surveillances, utilized electronic and video surveillance, seized property and assets, and testified in state trial courts. I have participated in ten or more investigations involving the organized distribution of controlled substances. I have directed, as a case agent, and/or participated in drug trafficking

investigations. I have been the lead investigator, or participated in, investigations that utilized court ordered interception of wire and/or electronic communications. I have also reviewed numerous records of interviews conducted by other drug investigators. During my employment with HSI, I have routinely spoken with other agents who investigate the distribution of drugs. This includes, but is not limited to, agents from U.S. Border Patrol (USBP), the Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Bureau of Land Management (BLM), as well as other state/local and federal agencies, who have related to me the substance of their similar experiences and the results of their own narcotics investigations and interviews. As a result of these conversations and during the course of my employment, I have become knowledgeable with the distribution and trafficking methods employed by drug traffickers to smuggle, import, safeguard, store, transport, and distribute drugs. I also know that drug traffickers often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances.

6. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

**FACTS IN SUPPORT OF PROBABLE CASUE**

8. On August 20, 2018, at approximately 0620 hours, Celso Roberto LOPEZ Tambito (LOPEZ), a Mexican Citizen and United States Legal Permanent Resident (LPR), presented a valid LPR card and applied for entry into the United States at the Andrade, California Port of Entry (POE). LOPEZ was the registered owner, driver, and sole occupant of a 2002 Ford Windstar, bearing California license plates.

9. CBPO K. Lee and CEO R. Avery were performing pre-primary roving operations with CEO Avery's Human Narcotic Detection Dog (HNDD) when his HNDD alerted to the passenger side sliding door of the vehicle. CBPOs referred the vehicle through to secondary for further inspection.

10. In secondary, CBPO E. Gutierrez approached the minivan and took an additional negative Customs and Border Protection Declaration from the driver and sole occupant, LOPEZ. LOPEZ was removed from the vehicle and escorted to the vehicle secondary office. CEO Avery approached the vehicle in secondary and conducted an intensive canine search of the vehicle. Additionally, his HNDD alerted to the undercarriage and driver's side door panel of the vehicle behind the front driver's seat. CBPO Gutierrez and CBPO Mendez began searching the vehicle. Their search revealed one hundred fifty-two (152) plastic wrapped packages containing a crystalline substance. The packages were located inside of the driver and passenger sidewalls, passenger sliding door panel, and the spare tire. The total weight of the packages was 71.84 kilograms (158.38 pounds).

11. LOPEZ was arrested, waived his Miranda Rights and agreed to speak with Agents. LOPEZ stated that he was the registered owner of the vehicle and the user of **two** cellphones found in his possession, one of which, cellular telephone #2, utilized the number 775-412-8519 (the **Target Data**). LOPEZ advised that while visiting his wife in Algodones, Mexico, his brother-in-law borrowed his vehicle. LOPEZ received the vehicle back from his brother-in-law and did not notice any changes in appearance or operation. He drove the vehicle across the border into the United States and was stopped. Shortly after, LOPEZ was confronted about the methamphetamine discovered in his vehicle, LOPEZ explained that he was driving and should be responsible for what happened.

12. Upon arriving at the Port of Entry, HSI Agents identified a DHS evidence bag as property removed from the vehicle and LOPEZ, which contained personal property and cellular telephone #1. Customs and Border Protection Officers ("CBPO") seized cellular telephone #1 from LOPEZ during his arrest. I discovered and seized cellular telephone #2 from a compartment underneath the radio, inside the vehicle.

13. On August 21, 2018, Peter C. Lewis, United States Magistrate Judge, signed a criminal complaint charging LOPEZ with importation of a controlled substance, in violation of Title 21, United States Code, Sections 952 and 960.

//

14. Drug Enforcement Agency Laboratory analysis confirmed that there was approximately 67 kilograms of pure methamphetamine, and revealed that there was also approximately 215 grams of Fentanyl.

15. Based on the facts above, there is reason to believe that LOPEZ used cellular telephone #2 associated with Sprint PCS telephone number 775-412-8519 to communicate with other known and unknown co-conspirators in order to facilitate the importation of controlled substances. I believe that the **Target Data** may identify locations in the United States where LOPEZ was delivering narcotics.

16. In my training and experience, I have learned that Sprint PCS is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

17. Based on my training and experience, I know that Sprint PCS can collect cell-site data about the telephone number 775-412-8519. I also know that wireless providers such as Sprint PCS typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18. Based on my training and experience, I know that wireless providers such as Sprint PCS typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Sprint PCS typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the telephone number 775-412-8519's user or users and may assist in the identification of co-conspirators and/or victims.

**CONCLUSION**

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

20. Based upon my training and experience, consultation with other law enforcement officers experienced in the importation of controlled substances, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the Target Data to be seized, as set forth above and in Section I of Attachment B (incorporated herein), will be found in the location described in Attachment A (incorporated herein).

//

//

//

//

//

//

//

//

21. Therefore, I respectfully request that the Court issue a warrant requiring Sprint PCS to search its corporate records for the **Target Data** and to deliver the **Target Data** listed in Section I of Attachment B, so that I or another federal law enforcement agent may review the **Target Data** and seize the items described in Section II of Attachment B.

Andrew Schloe, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 19th day of December 2018.

Hon. Ruth Bermudez Montenegro
United States Magistrate Judge